THE STATE OF OHIO, APPELLEE, v. BAKER, APPELLANT.

[Cite as State v. Baker (1976), 50 Ohio App. 2d 68.]

(No. C-75695—Decided September 27, 1976.)

Mr. Simon L. Leis, Jr., Mr. William E. Breyer, and Mr. David Albanese, for appellee.

Mr. H. Fred Hoefle, for appellant.

Per Curiam. This cause came on to be heard upon the appeal; the transcript of the docket, journal entries, and original papers from the Hamilton County Court of Common Pleas; the transcript of the proceedings; and the assignments of error, briefs and arguments of counsel.

The defendant, appellant herein, was convicted by the court sitting without a jury on facts stipulated by defendant's trial counsel, and tending to show two violations of R. C. 2907.05, entitled gross sexual imposition. Baker was sentenced as appears of record and now raises on appeal two interrelated assignments of error, that the judgment was contrary to law and against the manifest weight of the evidence, assertions supported by the following proposition of law:

"In the absence of evidence to the effect that the soles of the feet are erogenous zones, a mere showing that the defendant rubbed the feet of two boys less than 13 years of age on the defendant's fully clothed pubic region does

not constitute gross sexual imposition, and a conviction of such offense based on such evidence is both contrary to law and to the manifest weight of the evidence, requiring reversal."

The factual fundament for this proposition consists of evidence showing, inter alia, that the defendant importuned two boys, both under thirteen years of age, to accompany him in his automobile; that the children were thereupon tied and handcuffed and caused to have their shoes and socks removed; and that they were thereafter caused to have their feet manipulated by the defendant upon his clothed genital area until he had achieved a state of sexual excitation sufficient to twice prompt ejaculation, the latter event occurring through use of each child, respectively.

Baker was convicted under the statute providing, in pertinent part:

"(A) No person shall have sexual contact with another not the spouse of the offender, when any of the following apply:

"(1) The offender purposely compels the other person to submit by force or threat of force.

"(2) For the purpose of preventing resistance, the offender substantially impairs the other person's judgment or control by administering any drug or intoxicant to the other person, surreptitiously or by force, threat of force, or deception.

"(3) The other person is less than thirteen years of age, whether or not the offender knows the age of such person.

"(B) Whoever violates this section is guilty of gross sexual imposition. Violation of division (A)(1) or (2) of this section is a felony of the fourth degree. Violation of division (A)(3) of this section is a felony of the third degree.

"(C) A victim need not prove physical resistance to the offender in prosecutions under this section."

The definitional section of R. C. Chapter 2907, relating to sex offenses, is R. C. 2907.01, and explains the meaning of the term "sexual contact" as follows:

"(B) 'Sexual contact' means any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person."

Inasmuch as it is neither seriously argued nor proved that feet are erogenous zones, nor that the children were sexually gratified in the cause before this Court, the pivotal point of defendant's argument poses the question whether the language of R. C. 2907.01(B), defining "sexual contact" as "any touching of an erogenous zone of another," when taken in the context of the antecedent statute proscribing gross sexual imposition, must be read to require that the "touching" done by the offender be of an erogenous zone of the victim. Here, of course, the scenario was reversed, with the touching being done by the victim upon an erogenous zone of the defendant.

The question is one of statutory construction and is not without its difficulties, not only syntactically but in its practical considerations. To accept the position of the defendant is to, in effect, declare a lacunae in the coverage of the two statutes, excluding from criminal sanctions the sordid and potentially dangerous conduct at issue here. While the instant conduct might conceivably have supported an assault or menacing charge,[1] it seems clear that no other section within the chapter dealing with sex offenses would extend coverage if R. C. 2907.05 does not. It is not to be credited that this result was consciously intended by the General Assembly. Nevertheless, we must take the statutes as we find them, not as we might prefer to have found them.

Three considerations, it seems to us, might be argued on behalf of the position of the state, and we have considered them carefully. First, as we have suggested above, we are unable to believe that it was not the purpose and intent of the legislature to proscribe acts such as those committed herein through the use of R. C. 2907.05, the gross sexual imposition statute. We note, for instance, that former R. C. 2903.01, which was replaced by the en-

---

[1]R. C. 2903.13; 2903.22.

actment of Am. Sub. H. B. 511 with the series of statutes inclusive of 2907.05,[2] prohibited acts such as those at issue here, through the use of language which made criminal the taking of "indecent and improper liberties" with the person of a child. Secondly, a reading of the definitional section, R. C. 2907.01(B), reveals the omission of any *express* requirement that the unlawful touching be done by the offender upon an erogenous zone of someone other than the offender. Finally, the penultimate word in the definitional statute, taken in the context of the closing phrase in that section, reveals that the offense is not complete unless the purpose of the touching is that of "sexually arousing or gratifying *either* person," an apparent legislative recognition of the ambiguity of stimulus and response that can characterize these complicated relationships.

Against these somewhat abstract, if appealing, considerations is, however, the clear language of the lead sentences in the two statutes involved. Thus, R. C. 2907.05(A) describing the proscribed conduct begins:

"No person shall have sexual contact *with another* * * *" (emphasis added) and R. C. 2907.01 defines sexual contact as:

"(B) 'Sexual contact' means any touching of an erogenous zone *of another* * * *." (Emphasis added.) The difficulty of concluding otherwise than that the subject of both statutes is the *offender* and the object of both is the *victim* is readily apparent. One must honestly recognize the artificiality of a construction which would define "another" as the victim in R. C. 2907.05(A) (as concededly it must be defined), but at the same time to define "another" to *include* the offender for purposes of R. C. 2907.01. Rules of construction require that these enactments, passed and becoming effective at the same time and being in pari materia, be construed together. *State* v. *Smith* (1931), 123 Ohio St. 237. It must, we conclude, be assumed that the word "another" as used in R. C. 2907.05(A) is given the same

---

[2]*I. e.*, R. C. 2907.04, 2907.05, 2907.06, 2907.09. See Disposition Table, 1973 Special Supplement, Page's Ohio Revised Code.

meaning when used in R. C. 2907.01. 50 Ohio Jurisprudence 2d 176, Statutes, Sections 198-9.

Finally, and perhaps most persuasive even if we were to agree to the existence of an ambiguity or uncertainty in the statutory scheme, we are commanded by the general rule of construction set out in R. C. 2901.04 to resolve all such questions against the state and in favor of the accused:

"(A) Sections of the Revised Code defining offenses or penalties shall be strictly construed against the State, and liberally construed in favor of the accused."

We cannot help but observe that the end product of our foregoing deliberations is unfortunate and unwelcome to us, but we do not have the freedom, wisely, to entertain that consideration. The judgment of the trial court is reversed, and the defendant is discharged.

*Judgment reversed.*

SHANNON, P. J., PALMER and KEEFE, JJ., concur.