**The PEOPLE of the State of Colorado,**
**Plaintiff-Appellant,**

v.

**Michael Anthony ARMSTRONG,**
**Defendant-Appellee.**

No. 84SA365.

Supreme Court of Colorado,
En Banc.

June 9, 1986.

Milton K. Blakey, Dist. Atty., David I. Marsh, Chief Deputy Dist. Atty., Aspen, for plaintiff-appellant.

No Appearance for defendant-appellee.

VOLLACK, Justice.

Pursuant to section 16–12–102, 8 C.R.S. (1978), the People appeal the dismissal by the trial court of two counts of second degree assault on a peace officer under section 18–3–203(1)(f), 8 C.R.S. (1978 and 1985 Supp.). We reverse and remand with directions.

## I.

On December 3, 1983, at approximately 10:10 P.M., Aspen police officers White and King responded to a fight in progress in an alley. The defendant, Michael Anthony Armstrong, was not involved in the fight, but when the two officers attempted to intervene, Armstrong demanded that the officers leave and "mind their own fucking business." The officers continued to attempt to break up the fight, and the defendant continued to verbally assault the officers. Officer King warned Armstrong that he was interfering with the officers' attempt to stop the fight and that if he continued, he could be arrested for "obstructing a peace officer." The defendant continued to interfere. The officers backed Armstrong away from the fight approximately ten feet and again explained to him that his interference could result in his arrest. As the officers attempted to return to the original altercation, the defendant followed and attempted to physically place himself between the officers and the fight. Officer King then requested backup assistance. Upon the arrival of the backup assistance, officer King told Armstrong, "Otis, you're under arrest for obstructing. Turn around, put your hands behind your back...." Armstrong refused to comply. Because officer King could not handcuff the defendant alone, he and another officer grabbed one of Armstrong's arms in an attempt to secure and handcuff him. A scuffle ensued. Before the officers were able to subdue the defendant, Armstrong punched officer Hauswirth in the face and

kneed officer Brannan in the chest. Two sets of handcuffs were used.

The defendant was charged with obstructing a peace officer under section 18–8–104(1), 8 C.R.S. (1978); resisting arrest under section 18–8–103(1)(a), 8 C.R.S. (1978); and two counts of assault in the second degree under section 18–3–203(1)(f), 8 C.R.S. (1978 and 1985 Supp.). The defendant was also charged with counts not related to the subject matter of this appeal.

In a pretrial hearing, the district court dismissed the second degree assault charges. It ruled that the second degree assault statute and the resisting arrest statute, under the facts of this case, prescribed different sanctions for the same criminal conduct, in violation of equal protection guarantees. We believe the district court dismissed the charges prematurely. It should have allowed the People to present evidence at trial as to the charge of second degree assault. Accordingly, we reverse and remand with directions.

## II.

We first determine, as a threshold question, whether section 18–3–203(1)(f), 8 C.R.S. (1978 and 1985 Supp.), applies to a field arrest situation. The applicable portion of the second degree assault statute states:

> While lawfully confined *or* in custody, he violently applies physical force against the person of a peace officer or fireman engaged in the performance of his duties *or* while lawfully confined or in custody as a result of being charged with or convicted of a crime, he violently applies physical force against a person engaged in the performance of his duties while employed by or under contract with a detention facility, as defined in section 18–8–203(3), *and* the person committing the offense knows or reasonably should know that the victim is a peace officer or fireman engaged in the performance of his duties *or* a person engaged in the performance of his duties while employed by or under contract with a detention facility. A sentence imposed pursu-

ant to this paragraph (f) shall be mandatory, and the court shall not grant probation or a suspended sentence, in whole or in part, and shall run consecutively with any sentences being served by the offender. A person who participates in a work release program, furlough, or any other similar authorized supervision or unsupervised absence from a detention facility, as defined in section 18–8–203(3), and who is required to report back to the detention facility at a specified time shall be deemed to be in custody.

Section 18–3–203(1)(f), 8 C.R.S. (1978 and 1985 Supp.) (emphasis added).

The applicable portion of the resisting arrest statute states:

> (1) A person commits resisting arrest if he knowingly prevents or attempts to prevent a peace officer, acting under color of his official authority, from effecting an arrest of the actor or another, by:
> (a) Using or threatening to use physical force or violence against the peace officer or another.

Section 18–8–103, 8 C.R.S. (1978).

■■■ When the plain meaning of a statute is clear, it is unnecessary to examine the legislative history with regard to that statute. *People v. Deadmond*, 683 P.2d 763 (Colo.1984); *Engelbrecht v. Hartford Association Acc. and Indem. Co.*, 680 P.2d 231 (Colo.1984). The first clause in section 18–3–203(1)(f), "[w]hile lawfully confined or in custody, he violently applies physical force against the person of a peace officer or fireman engaged in the performance of his duties, ..." makes no reference to a detention facility employee, while the rest of the section clearly does. If the legislature intended that this first clause be applicable only in detention or correctional facility situations, it would have so stated. Moreover, the use of the disjunctive, "or," makes it plain that 18–3–203(1)(f) applies to field arrest situations as well as to detention facilities. In both *People v. Wieder*, 693 P.2d 1006 (Colo.App.1984), and in *People v. Olinger*, 39 Colo.App. 491, 566 P.2d 1367 (1977), the court of appeals held that the General Assembly intended the word

"confined" to have a meaning different from and to be more restrictive than "custody," and that the word "custody" was intended to correct a shortcoming or deficiency previously existing in the statute.

██ Moreover, we disagree with Armstrong's claim that the definition of "in custody," as contained in CJI–Crim. 10:20, 10(4), is controlling. The April 28, 1983, order of Paul V. Hodges, then Chief Justice of the Colorado Supreme Court, adopting CJI–Crim. stated:

> These instructions are intended as guidelines and should be used in cases in which they are applicable. The Court does not specifically approve any one of these instructions since they have not been tested in an adversary proceeding. They are not intended to be a complete set of instructions for each case and additional or different instructions may be required depending on the issues of fact and law presented at trial. Until these instructions are tested in an adversary proceeding, they are approved in principle.

Thus, while CJI–Crim. carries weight and should be considered by a trial court, an opinion of an appellate court is clearly controlling. *People v. Wieder,* 693 P.2d 1006 (Colo.App.1984); *People v. Olinger,* 39 Colo.App. 491, 566 P.2d 1367 (1977).

### III.

██ The equal protection guarantees contained in Article II, Section 25, of the Colorado Constitution have been held to invalidate separate statutes proscribing the same criminal conduct with different penalties. *People v. Wilhelm,* 676 P.2d 702 (Colo.1984); *People v. Westrum,* 624 P.2d 1302 (Colo.1981). Statutes prescribing different sanctions for what ostensibly might be different acts, but offering no rational standard for distinguishing such different acts for purposes of disparate punishment, also contravene the equal protection guarantees of the Colorado Constitution. *People v. Calvaresi,* 188 Colo. 277, 534 P.2d 316 (1975). However, harsher penalties for crimes committed under different circumstances than those which accompany the commission of other crimes do not violate equal protection guarantees if the classification is rationally based upon differences in the acts or the conduct which is proscribed. *People v. Gibson,* 623 P.2d 391 (Colo.1981).

Whether section 18–3–203(1)(f), 8 C.R.S. (1978 and 1985 Supp.) (second degree assault), and section 18–8–103(1)(a), 8 C.R.S. (1978) (resisting arrest), proscribe substantially identical conduct requires an inquiry into the point at which one is arrested and the point at which one is "in custody."

██ Whether a person has been arrested for constitutional purposes must be determined not on the basis of the officer's subjective state of mind, but on an objective "reasonable person" standard. *People v. Tottenhoff,* 691 P.2d 340 (Colo.1984). Under this standard, a court must assess the totality of circumstances surrounding the officer's encounter with the person and determine whether, in view of these circumstances, a reasonable person in that situation would have believed that he was being arrested, rather than merely temporarily detained for a brief investigation. *Id.; People v. Pancoast,* 659 P.2d 1348 (Colo.1982).

For purposes of custodial interrogation, we have considered several factors in determining whether a person is in custody, including:

> The time, place and purpose of the encounter; the persons present during the interrogation; the words spoken by the officer to the defendant; the officer's tone of voice and general demeanor; the length and mood of the interrogation; whether any limitation of movement or other form of restraint was placed on the defendant during the interrogation; the officer's response and the questions asked by the defendant; whether directions were given to the defendant during the interrogation; and the defendant's verbal and non-verbal responses to such directions.

*People v. Thiret*, 685 P.2d 193, 203 (Colo. 1984).

The totality of the circumstances surrounding the interrogation, when viewed by an objective standard of whether a reasonable person in the defendant's circumstances would have believed that he was free to leave the officer's presence, determines whether the defendant was in custody. *Thiret*, 685 P.2d at 203; *People v. Johnson*, 671 P.2d 958 (Colo.1983).

What constitutes an arrest and what constitutes in custody would appear to turn on similar if not the same objective reasonable person standard. However, the definition of custody necessarily differs from that of arrest for purposes of section 18–3–203(1)(f), 8. C.R.S. (1978 and 1985 Supp.), when the person subject to an arrest resists that arrest. In this situation, to effect an arrest, the peace officer must apply a level of physical control over the person resisting the arrest so as to reasonably ensure that the person does not leave. Once the arrest has been effected, then the person is in custody for purposes of section 18–3–203(1)(f). Accordingly, we hold that an arrest precedes "in custody" for purposes of section 18–3–203(1)(f), when the person subject to an arrest resists that arrest.

Here, the People assert that Armstrong was charged with resisting officer King's efforts to arrest him. Further, they assert that Armstrong was charged with assaulting officers Brannan and Hauswirth, after Armstrong was in custody. It is for the trier of fact to determine after the evidence has been presented at trial whether, under the totality of the circumstances, Armstrong may be guilty of both resisting arrest and second degree assault, or whether Armstrong may be guilty only of resisting arrest or only of second degree assault. One of the factors in making such a determination shall be whether the actions of Armstrong, which caused injury to the officers, were continuous, stemming from his efforts to resist arrest, or whether there was a break between his actions to thwart officer King's efforts to arrest him and the actions which lead to the injury of officers Brannan and Hauswirth.

Accordingly, we reverse and reinstate the two second degree assault charges.

LOHR, J., specially concurs.

DUBOFSKY, J., dissents.

LOHR, Justice, specially concurring:

This is an appeal from an order of the district court dismissing two counts of second degree assault based on the conclusion that, as applied to the facts in this case, the second degree assault statute violates equal protection of the laws. As the majority opinion demonstrates, and the dissent agrees, when the second degree assault statute, § 18–3–203(1)(f), 8 C.R.S. (1978 & 1985 Supp.), is properly construed it is fully consistent with constitutional guarantees of equal protection. This is the only issue before us. Therefore, I agree that the order of dismissal should be reversed and the charges reinstated.

The dissenting opinion takes the position that dismissal was proper because there was no probable cause to support the second degree assault charges. This may be true, for the record strongly suggests that the trial court was of the view that a person could be "in custody" for purposes of section 18–3–203(1)(f) before an "arrest" is accomplished within the meaning of section 18–8–103, 8 C.R.S. (1978), the resisting arrest statute. The majority opinion properly rejects this construction. The trial court, therefore, appears not to have considered the probable cause issue under a correct interpretation of the statute. Although the dissent makes a convincing case that there is no probable cause to support the second degree assault charges, the trial court has not had an opportunity to consider that question and the issue is not properly presented by this appeal. Therefore, I concur in the reversal of the order of dismissal and would leave the probable cause issue to be resolved in further proceedings in the trial court.

DUBOFSKY, Justice, dissenting:

Because I agree with the district court's dismissal of the two counts of second degree assault under section 18–3–203(1)(f), 8 C.R.S. (1978 & 1985 Supp.), I respectfully dissent. In most cases a district court should allow the People to present evidence at trial concerning charges that appear to stem from the same conduct; however, in this case, the testimony offered at the preliminary hearing clearly indicates that the appropriate charge was resisting arrest under section 18–8–103(1)(a), 8 C.R.S. (1978).

At the preliminary hearing, Officer King testified that the conduct involved in this case took place over a four to five minute period during which three police officers attempted to subdue the defendant. Although King had warned the defendant not to interfere with the officers' attempt to stop the fight, the defendant placed his hand on Officer White and tried to step between the officer and the two persons who had been fighting. After Officer Hauswirth and Officer Brannan arrived to provide backup assistance, King told the defendant that he was under arrest for obstructing police officers and ordered the defendant to turn around and put his hands behind his back. King and Hauswirth grabbed the defendant by opposite arms and attempted to handcuff him, but the defendant began to thrash and flail his arms, and the two police officers and the defendant fell to the ground. The defendant was lying on the ground on his stomach with his arms under his chest while Brannan, King, and Hauswirth were attempting to pull the defendant's arms out from under him.

The police officers and the defendant then stood up, and the defendant kneed Brannan in the chest before the defendant fell to the ground a second time. Brannan was then able to pull the defendant's left arm out from under him and handcuff it to the defendant's belt. Hauswirth testified that at this point the defendant hit him in the face with his right fist. The three police officers were then able to handcuff the defendant's right hand.

Because preliminary hearings under section 18–1–404, 8 C.R.S. (1978), are only available for felony charges, the district court's initial ruling at the preliminary hearing that probable cause existed to believe that the defendant had committed assault did not encompass the misdemeanor charge of resisting arrest. Subsequently the defendant moved to dismiss the second degree assault charges on the basis that section 18–3–203(1)(f) could not constitutionally be applied to him because the same alleged conduct was proscribed under section 18–8–103(1)(a), the resisting arrest statute. The district court ruled that application of section 18–3–203(1)(f) to the facts of this case denied the defendant equal protection.

Courts usually analyze cases in which a defendant is charged with multiple counts based on the same act under section 18–1–408(3), 8 C.R.S. (1985 Supp.), which allows the court, upon application by a defendant charged with two or more offenses supported by identical evidence, to "require the state, at the conclusion of all the evidence, to elect the count" upon which the defendant shall be tried. Section 18–1–408(3) suggests that the defendant's motion to dismiss in this case was premature. However, the People's response that the resisting arrest charge was based on evidence that the defendant pulled away from Officer King and Officer Hauswirth and that the second degree assault charge was based on evidence that the defendant kneed Officer Brannan and punched Officer Hauswirth suggests that the People intended that section 18–1–408(3) should not apply to this case. Without deciding whether section 18–1–408(3) should apply to this case, I believe that the defendant's concern about more than one conviction based upon identical evidence is encompassed within a section 18–1–408(3) inquiry.

The district court, in ruling on the motion to dismiss, observed that the "crux of the case lies in a reading of the elements of resisting arrest," particularly the "*effect-*

*ing an arrest*" element.[1] (Emphasis in original.) The court determined that

> to "effect an arrest" of a person the peace officer must enforce, accomplish, or complete the arrest. It is not in this Court's mind, synonomous [sic] with the "arrest" which invokes a person's right to be advised of his rights under the Miranda Decision. Rather in the context of this case an arrest is effected when the Defendant is subdued, brought under control, handcuffed, restrained, or otherwise objectively seen to be under the dominion and control of the arresting officer. Only then has an arrest been "effected."

The result of the district court's ruling is a finding that resisting arrest is the appropriate charge. In effect, the district court dismissed the assault charges, based on preliminary hearing testimony, for lack of probable cause.

Although I disagree with the district court determination that the assault charges could be dismissed before trial because of constitutional concerns, I believe the charges were properly dismissed and therefore dissent in this case. The four police officers involved testified at the preliminary hearing, and their testimony concerning the short four to five minute span of the sequence was uncontradicted and is unlikely to change at trial. The testimony indicates that the defendant properly was charged with resisting arrest, not with second degree assault on police officers.

---

**1.** Section 18–8–103, 8 C.R.S. (1978), provides in part as follows:

> (1) A person commits resisting arrest if he knowingly prevents or attempts to prevent a peace officer, acting under color of his official authority, *from effecting an arrest* of the actor or another, by:
>
> (a) Using or threatening to use physical force or violence against the peace officer or another....

(Emphasis added.)