Edward A. WIEDER, Petitioner,

v.

The PEOPLE of the State of Colorado, Respondent.

No. 84SC324.

Supreme Court of Colorado, En Banc.

June 23, 1986.

David F. Vela, Colorado State Public Defender, Thomas M. Van Cleave, III, Deputy State Public Defender, Denver, for petitioner.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Virginia Byrnes Horton, Asst. Atty. Gen., Denver, for respondent.

VOLLACK, Justice.

The defendant, Edward A. Wieder, appeals his conviction for second degree assault under section 18–3–203(1)(f), 8 C.R.S.

(1978 and 1985 Supp.),[1] and he appeals the use of his prior conviction as a partial basis for his habitual criminal conviction, claiming that he had been inadequately advised of the elements of the crime of second degree burglary, the object crime of the conspiracy of which he was charged. We affirm the judgment as to the second degree assault charge, and we affirm the trial court's use of the prior conviction as a partial basis for the habitual criminal conviction.

## I.

Wieder was found on the floor of a car that had struck a power pole. After assistance arrived, Wieder attempted to assault a paramedic. Police officers Macias and Washburn then pulled Wieder out of the automobile. Because Wieder was struggling, the officers pulled Wieder's arms behind his back and placed handcuffs on his wrists. They placed him under arrest for driving under the influence. The officers led Wieder to a police car, and as they attempted to place him in the patrol car, he head-butted Officer Macias and kneed Officer Washburn in the groin. The officers then called a paddy wagon to take the defendant to the station house.

Wieder was convicted of second degree assault in violation of section 18–3–203(1)(f), 8 C.R.S. (1978 and 1985 Supp.), which makes unlawful an assault against a peace officer while "lawfully confined or in custody." The defendant was also convicted of two counts of being a habitual crimi-

nal and was sentenced to twenty-five years. In *People v. Wieder,* 693 P.2d 1006 (Colo. App.1984), the court of appeals affirmed Wieder's conviction.

## II.

Wieder first claims that the second degree assault statute, section 18–3–203(1)(f), 8 C.R.S. (1978 and 1985 Supp.), is limited to conduct arising in a detention or correctional facility context and does not apply to a field arrest situation. We disagree.

Recently, in *People v. Armstrong,* 720 P.2d 165 (Colo.1986), we held that the plain language of section 18–3–203(1)(f) not only applied to conduct arising in a detention or correctional facility context, but also applied to conduct arising from a field arrest situation. Wieder does not dispute the plain language of section 18–3–203(1)(f). Rather, he claims the purposes stated in the governor's proclamation call for an extraordinary session of the General Assembly limit the application of the amended words, "in custody," only to detention facility situations. The applicable purpose for which the governor convened the General Assembly was:

> ... To consider the enactment of legislation amending sections 18–3–202 and 18–3–203, Colorado Revised Statutes 1973, concerning assault upon a person employed by or under contract with a detention facility.

Exec. Order, 1976 Colo. Sess. Laws 1 (First Extraordinary Session).

---

1. The applicable portion of the second degree assault statute states:

    While lawfully confined *or* in custody, he violently applies physical force against the person of a peace officer or fireman engaged in the performance of his duties *or* while lawfully confined or in custody as a result of being charged with or convicted of a crime, he violently applies physical force against a person engaged in the performance of his duties while employed by or under contract with a detention facility, as defined in section 18–8–203(3), *and* the person committing the offense knows or reasonably should know that the victim is a peace officer or fireman engaged in the performance of his duties *or* a person engaged in the performance of his

duties while employed by or under contract with a detention facility. A sentence imposed pursuant to this paragraph (f) shall be mandatory, and the court shall not grant probation or a suspended sentence, in whole or in part, and shall run consecutively with any sentences being served by the offender. A person who participates in a work release program, furlough, or any other similar authorized supervision or unsupervised absence from a detention facility, as defined in section 18–8–203(3), and who is required to report back to the detention facility at a specified time shall be deemed to be in custody.

Section 18–3–203(1)(f), 8 C.R.S. (1978 and 1985 Supp.) (emphasis added).

Article IV, section 9, of the Colorado Constitution provides:

> The governor may, on extraordinary occasions convene the general assembly, by proclamation, stating therein the purpose for which it is to assemble; but at such special session no business shall be transacted other than that specially named in the proclamation.

Article V, section 7, of the Colorado Constitution provides in part:

> The general assembly shall meet at other times when convened in special session by the governor pursuant to section 9 of article IV of this constitution ... to consider only those subjects specified in such request.

While the governor's proclamation call may state the purpose for which the General Assembly is convened or may limit its consideration to a specific area of a general subject, the General Assembly is not limited to a narrow, technical interpretation of the subject matter comprised in the governor's call. However, a speculative, indirect, and tangential relationship between legislation and the call item on which it is based will be insufficient. *People v. Larkin*, 183 Colo. 363, 517 P.2d 389 (1973). To determine whether legislation enacted pursuant to the call of the governor passes constitutional muster, we have adopted a "rational nexus" test, wherein the challenged legislation must bear a rational nexus to an item specified in the governor's call. *Empire Savings Building and Loan Association v. Otero Savings and Loan Association*, 640 P.2d 1151 (Colo.1982).

Here, we believe there is a rational nexus between the protection of police officers and fire fighters from assault while in the field and the governor's call to protect persons from assault who are employed by or under contract with a detention facility. We hold that section 18–3–203(1)(f) applies not only to detention facilities, but also to field arrests.

## III.

Wieder next claims that section 18–3–203(1)(f), 8 C.R.S. (1978 and 1985 Supp.), violates the equal protection guarantees contained in article II, section 25, of the Colorado Constitution, because his conduct was substantially identical to that proscribed by section 18–8–103(1)(a), 8 C.R.S. (1978) (resisting arrest), and section 18–3–203(1)(c), 8 C.R.S. (1978). Wieder did not raise this equal protection argument in terms of section 18–3–203(1)(c) either during trial or in his motion for new trial or during his appeal to the court of appeals. We decline to address that portion of Wieder's contention.

As to Wieder's contention that section 18–3–203(1)(f) (second degree assault) and section 18–8–103(1)(a), 8 C.R.S. (1978) (resisting arrest), proscribe substantially identical conduct in violation of the equal protection guarantees, our recent decision in *People v. Armstrong*, 720 P.2d 165 (Colo. 1986), is controlling. In *Armstrong*, we held that when the second degree assault statute, section 18–3–203(1)(f), is properly construed, it is fully consistent with constitutional guarantees of equal protection. It is a question for the trier of fact, based upon the totality of the circumstances, to determine after the evidence has been presented at trial whether Wieder may be guilty of second degree assault. This issue turns on the point at which Wieder was arrested and the point at which he was "in custody." We observed that the definition of "custody" necessarily differs from that of arrest for purposes of section 18–3–203(1)(f), 8 C.R.S. (1978 and 1985 Supp.), when the person subject to an arrest resists that arrest. Furthermore, we stated that in this situation, to effect an arrest, the peace officer must apply a level of physical control over the person resisting arrest so as to reasonably ensure that the person does not leave. Once the arrest has been effected, the person is in custody for purposes of section 18–3–203(1)(f).

Here, the record shows that an arrest had clearly been effected prior to the time that Wieder assaulted Officers Macias

and Washburn. Under the test announced in *Armstrong*, the conduct was clearly different. Because the evidence is clear as to this critical point, we hold that Wieder was properly charged and convicted under section 18–3–203(1)(f), 8 C.R.S. (1978 and 1985 Supp.).

We affirm the verdict and judgment as to the second degree assault charge.

## IV.

Wieder contends that his 1976 guilty plea to conspiracy to commit burglary was rendered involuntary by the trial court's failure to explain the elements of burglary to him. The record at the providency hearing shows that the trial court accepted Wieder's plea of guilty to the charge of conspiracy to commit burglary after it read the charge to him and questioned him to ascertain whether the plea was voluntary. The court explained the requirement that the People prove the elements of the conspiracy charge at trial:

> Now, Mr. Weider [sic], if you were to go to trial on the charge of Conspiracy to Commit Second Degree Burglary, a Class 5 Felony, there are material elements of the charge that the District Attorney would have to prove beyond a reasonable doubt, and they are that on December 20th, 1975, that you, along with some other person or with Dave Johnson or some other person not known to the District Attorney—that you entered into an agreement, either by—through your actions or by word of mouth, to commit the crime of Second Degree Burglary, and that this was done with the specific intent and that you did agree to aid the other person in the planning and commission or attempted commission of the said crime and that some one of the conspirators did some kind of an act, an overt act, in pursuance of the conspiracy.

The defendant does not contest the adequacy of the above explanation which advised him of the nature of the conspiracy charge to which he was pleading guilty. Rather, he claims that the trial court's failure to explain to him the elements of the underlying crime of second degree burglary rendered his plea involuntary. In *Watkins v. People*, 655 P.2d 834 (Colo.1983), we held that the charge of conspiracy was sufficiently complex to require some explanation of its elements to the defendant. We also observed in *Watkins* that the "conspiracy has legal significance only with respect to some other crime which is the object of the conspiracy." 655 P.2d at 838. The *Watkins* trial court did not explain either the elements of the charge of conspiracy or the elements of the underlying object crime.

■■■ "Where some explanation is given by the court in accepting the plea, its adequacy is dependent upon the nature and complexity of the crime." *Wright v. People*, 690 P.2d 1257 (Colo.1984); *People v. Muniz*, 667 P.2d 1377 (Colo.1983). Unlike *Watkins*, where neither the elements of conspiracy nor the elements of its underlying object crime were explained to the defendant, the court did explain to Wieder the elements of conspiracy. While the trial court did not explain the elements of the underlying object crime of second degree burglary, we do not believe under the factual circumstances of this case that the crime of second degree burglary was so complex or dependent upon legalisms not known to Wieder that a fuller explanation was necessary during the Crim.P. 11 advisement. At the time of Wieder's guilty plea to conspiracy to commit burglary, Crim.P. 11 did not require that the trial court advise the defendant of each element of a crime charged. Rather it required the court to determine whether the defendant understood the nature of the charge and the elements of the offense to which he pled guilty. In 1974 Wieder had been convicted of first and second degree burglary. At the time he pled guilty to conspiracy to commit second degree burglary, he was no novice to the elements of second degree burglary. The defendant also waived a factual basis on his guilty plea to conspiracy to commit second degree burglary. A plea bargain was the basis for the Crim.P. 11 advisement to the crime, and it included

a provision for dismissing a second degree burglary charge. Under these circumstances, we believe the trial court's failure to explain the elements of second degree burglary was cured by evidence in the record showing that Wieder understood and had knowledge of the elements of second degree burglary. *People v. Moore,* 636 P.2d 1290 (Colo.1981). Wieder never contended that he did not in fact understand the elements of the crime of second degree burglary. In *People v. Edwards,* 186 Colo. 129, 526 P.2d 144 (1974), we held that where there was never any indication that the defendant did not understand the elements of the offense, the guilty plea should not be vacated.

We affirm the trial court's application of Wieder's earlier guilty plea to conspiracy to commit second degree burglary as a partial basis for Wieder's habitual criminal conviction.

LOHR, J., concurs in part and dissents in part.

QUINN, C.J., joins in the partial concurrence and dissent.

DUBOFSKY, J., does not participate.

LOHR, Justice, concurring in part and dissenting in part:

In this case, Edward Wieder was convicted of two counts of second degree assault, § 18–3–203(1)(f), 8 C.R.S. (1978 & 1985 Supp.), and was adjudged a habitual criminal based upon the jury's determinations that he had been previously convicted of two felonies, *see* § 16–13–101, 8 C.R.S. (1985 Supp.). He was sentenced to imprisonment for a term not less than twenty-five nor more than twenty-seven years. The majority opinion upholds the convictions and sentence. I agree with parts I, II and III of the majority opinion sustaining the convictions for second degree assault. I respectfully dissent to part IV of that opinion upholding the use of Wieder's prior conviction of conspiracy to commit second degree burglary, which was based upon his plea of guilty, to constitute part of the basis for his adjudication as a habitual

criminal in the present case. Therefore, I would reverse the habitual criminal adjudication and remand the case for resentencing on his two second degree assault convictions within the range of penalties prescribed for those offenses.

The habitual criminal statute involved here, section 16–13–101(1), provides for increased punishment for conviction of a felony for which the maximum penalty prescribed by law exceeds five years if within ten years of the date of commission of the offense the accused has been twice previously convicted of a felony. One of the convictions upon which the habitual criminal charges were predicated in the present case was a conviction for conspiracy to commit second degree burglary, entered by the Denver District Court in 1976 based upon Wieder's guilty plea. In this appeal, as in the trial court, Wieder contends that his plea of guilty resulting in the 1976 conviction was constitutionally invalid because the trial court did not adequately advise him of the nature and elements of the charge before accepting the plea.

This court has stated that "[a] prior conviction obtained in violation of a constitutional right of the accused cannot be used in a subsequent criminal proceeding to enhance punishment." *Watkins v. People,* 655 P.2d 834, 837 (Colo.1983). If the prior conviction is based on a guilty plea, the record must establish that the plea was voluntarily and understandingly made. *Id.* A plea cannot be made voluntarily and understandingly unless the defendant understands the nature of the charge against him and the critical elements of the crime to which his plea was given. *Harshfield v. People,* 697 P.2d 391, 393 (Colo.1985). Compliance with Crim.P. 11(b) is an indication that the trial court has accepted a constitutionally valid plea of guilty. *People v. Lesh,* 668 P.2d 1362, 1367 (Colo.1983). When Wieder entered his guilty plea in 1976, Crim.P. 11(b) required a trial court to determine, among other things, that the plea was voluntary on the defendant's part and that the defendant understood the nature and elements of the offense to which

he was pleading, the right to trial by jury and the possible penalty. Crim.P. 11(b), 7 C.R.S. (1973).

In a habitual criminal proceeding, a defendant who contends that his prior conviction was constitutionally invalid must make a prima facie showing that the plea supporting the conviction was unconstitutionally obtained. *Watkins v. People,* 655 P.2d at 837. A prima facie showing consists of "evidence which, when considered in a light most favorable to the defendant with all reasonable inferences drawn in his favor, will permit the court to conclude that the defendant's plea of guilty was not understandingly made." *Id.* The defendant can make a prima facie showing by presenting unrebutted testimony that no advisement or an inadequate advisement was given to the defendant in the proceeding in which he entered his guilty plea. *Crocker v. Colorado Department of Revenue, Motor Vehicle Division,* 652 P.2d 1067, 1071–72 (Colo. 1982). Once such a showing has been made, the prior conviction is not admissible in the habitual criminal proceeding unless the prosecution can establish by a preponderance of the evidence that the conviction was constitutionally obtained. *Watkins v. People,* 655 P.2d at 837.

During his trial in the present case, Wieder attacked the validity of his 1976 conviction for conspiracy to commit second degree burglary. Wieder testified that in connection with entering a plea of guilty to that conspiracy charge, he did not recall being advised of the elements of the charge against him, the possible penalty attendant to that charge, or his right to have an attorney or to bail. He also testified that

he did not remember being asked whether his plea was free and voluntary. The following dialogue then occurred between Wieder and his attorney:

[Attorney]: Would you recall the judge asking you those questions?

[Wieder]: Yes, I would.

Q: And you are sure he didn't?

A: I'm positive, yes.

On cross-examination, in response to leading questions, the defendant again affirmed that he could not remember being advised of his various constitutional rights. The trial court refused to suppress the prior conviction, stating that there had been an "insufficient showing to set aside or determine that the conviction cannot be used."[1]

In my view, the testimony by the defendant, considered in the light most favorable to him, was sufficient to establish a prima facie case that the defendant's plea was unconstitutionally obtained. *See Crocker v. Colorado Department of Revenue,* 652 P.2d at 1071–72. This testimony constituted the only direct evidence of the circumstances under which Wieder's plea was given since a transcript of the hearing in which Wieder entered his plea was not available to the trial court in this case until after the trial had concluded.[2] To rebut this prima facie case, the prosecution offered into evidence an exhibit that consisted of no more than certified copies of the information filed in the 1976 conspiracy to commit burglary case, and the judgment of conviction, sentence, and mittimus in that case. This exhibit contained nothing to indicate the content of the advisement that Wieder received before pleading guilty and

1. The trial court also refused to suppress the prior conviction on the basis of ch. 190, sec. 3, § 16–5–402, 1981 Colo.Sess.Laws 926, 926–27, which purported to foreclose a defendant from collaterally attacking the validity of a conviction more than three years after the date of the conviction. We subsequently determined that this statute was unconstitutional in *People v. Germany,* 674 P.2d 345 (Colo.1983).

2. Because the trial court did not receive the transcript until shortly before it issued its order denying Wieder's motion for a new trial, the court and the parties were unaware during trial

that Wieder had not been advised of the elements of second degree burglary at the plea hearing. Moreover, as the majority notes, the transcript shows that the trial judge gave the defendant no explanation of the nature or elements of the crime of second degree burglary in explaining the conspiracy offense. Under these circumstances I see no basis to conclude that the plea was voluntarily and understandingly made. *See Harshfield v. People,* 697 P.2d 391, 393 (Colo.1985); *Watkins v. People,* 655 P.2d 834 (Colo.1983).

nothing to rebut Wieder's own testimony that he was not advised of the elements or the penalty of the crime with which he had been charged, or of his constitutional rights to an attorney.

In addition to offering the exhibit described above, the prosecution argued that Wieder's testimony consisted of no more than statements that he did not remember the contents of his advisement and thus that, applying the standards set forth in *People v. DeLeon*, 625 P.2d 1010 (Colo. 1981), Wieder had failed to make a prima facie case that his plea was unconstitutionally obtained. This argument fails on two counts. First, as already discussed, Wieder's testimony was more definite on the issue of the inadequacy of his advisement than the prosecution characterized it to be. Second, *People v. DeLeon* does not require a conclusion that Wieder failed to make a prima facie case.

In *DeLeon*, the defendant attempted to attack the validity of two prior traffic offense convictions. The transcripts relating to the convictions had been destroyed, but the docket sheets for each of the two cases were received in evidence. The docket sheets indicated that the defendant had appeared in court, been advised of his rights, waived formal proof, and pleaded guilty. The defendant testified that he had not been represented by an attorney and that he could not remember being advised of the nature or the elements of the offense with which he was charged or of the effect of his plea. He further testified that he did recall being advised of the possible penalties and being told "something" about a jury trial. The trial court in *DeLeon* found that the docket sheets reflected that the defendant had been adequately advised and that his pleas had been entered after a knowing and full waiver of his rights. We held that the trial court's findings were supported by the evidence and thus, could not be disturbed on review.

Unlike the defendant in *DeLeon*, Wieder testified not only that he could not remember being advised, but also that he was "positive" that he had not been advised of his rights. Furthermore, the exhibit offered by the prosecution in the present case contained none of the assurances of proper advisement that were found in the docket sheets in *DeLeon*. Thus the prosecution's reliance on *DeLeon* is misplaced and does not suffice to rebut the prima facie case established by Wieder at the trial.

Because I believe that Wieder made a prima facie case that his prior conviction was obtained in violation of his constitutional rights and that the prosecution did not rebut that prima facie case by showing by a preponderance of the evidence that the plea was constitutionally valid, I would hold that the trial court should have suppressed the use of the prior conviction for conspiracy to commit second degree burglary. Therefore, I would reverse the defendant's adjudication as a habitual criminal, which in part was based on the prior conspiracy conviction, and would remand for resentencing on the second degree assault convictions.

I am authorized to say that Chief Justice QUINN joins in this partial concurrence and dissent.