22CA0188 Peo v Williams 08-22-2024 COLORADO COURT OF APPEALS Court of Appeals No. 22CA0188 Arapahoe County District Court No. 03CR439 Honorable Eric B. White, Judge The People of the State of Colorado, Plaintiff-Appellee, v. Gary Robert Williams, Defendant-Appellant. ORDER AFFIRMED Division II Opinion by JUDGE FOX Grove and Sullivan, JJ., concur NOT PUBLISHED PURSUANT TO C.A.R. 35(e) Announced August 22, 2024 Philip J. Weiser, Attorney General, Joshua J. Luna, Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee Megan A. Ring, Colorado State Public Defender, Kira L. Suyeishi, Deputy State Public Defender, Denver, Colorado, for Defendant-Appellant 
1 ¶ 1 Defendant, Gary Robert Williams, appeals the postconviction court’s denial of his Crim. P. 35(c) motion. Because the motion was untimely, we affirm. I. Background ¶ 2 A jury convicted Williams of two counts of second degree burglary, a class three felony. The trial court adjudicated him a habitual criminal and sentenced him to two consecutive forty-eight-year terms in the custody of the Department of Corrections (DOC) plus five years of mandatory parole. ¶ 3 Williams directly appealed his conviction and sentence, and a division of this court affirmed. See People v. Williams, (Colo. App. No. 05CA0309, Nov. 6, 2008) (not published pursuant to C.A.R. 35(f)). The supreme court denied certiorari, and the mandate was issued on March 6, 2009. ¶ 4 On March 17, 2017, Williams filed a Crim. P. 35(a) motion to correct an illegal sentence. He argued that he was illegally sentenced to mandatory, rather than discretionary, parole. On May 25, 2017, the postconviction court granted the motion, vacated the mandatory parole provision, ordered discretionary parole, and issued an amended mittimus. 
2 ¶ 5 On March 19, 2020, Williams requested the appointment of alternate defense counsel to draft a Crim. P. 35(c) motion. Because he asserted “no specific factual or legal assertions on which the court could grant relief,” the postconviction court denied the request. ¶ 6 On May 27, 2020, a defense attorney entered a special appearance “for the purposes of filing a pro se motion pursuant to Crim. P. 35(c),” as well as a motion to file a Crim. P. 35(c) motion out of time. Counsel simultaneously filed “Part One” of Williams’ Crim. P. 35(c) motion, indicating that “Part Two” was being mailed by Williams. Counsel explained that the Crim. P. 35(c) deadline was May 26, 2020, but due to a clerical error, the motion was filed one day late due to justifiable excuse or excusable neglect. On May 29, 2020, Williams filed “Part Two” of the Crim. P. 35(c) motion, his claims for relief. ¶ 7 In November 2020, the postconviction court issued an order granting the motion to file out of time, finding “that a modest delay of a few days during a public health crisis, when access to legal resources [was] limited, qualifie[d] as justifiable excuse for the 
3 purposes [of] § 16-5-402(2)(d).” The court appointed Williams postconviction counsel to supplement his motion. ¶ 8 The People filed a response to Williams’ pro se Crim. P. 35(c) motion, arguing that it was untimely and that he failed to establish justifiable excuse or excusable neglect. ¶ 9 Postconviction counsel then filed a supplemental Crim. P. 35(c) motion, asserting that trial counsel was ineffective for failing to (1) move to dismiss under the speedy trial statute; (2) object to a violation of the rape shield statute; (3) object to hearsay testimony; (4) object to CRE 404(b) evidence; (5) conduct pretrial investigation; (6) call witnesses to testify at trial; and (7) object to the admission of an investigative report. He also asserted that trial counsel’s cumulative errors deprived Williams of effective assistance of counsel, and requested a proportionality review of his sentence. Counsel argued that the motion was timely because, under Leyva v. People, 184 P.3d 48 (Colo. 2008), abrogated by Hunsaker v. People, 2021 CO 83 (Hunsaker II), and People v. Baker, 2017 COA 102, rev’d, 2019 CO 97M, the correction of Williams’ sentence in 2017 renewed the three-year deadline for collaterally attacking his original judgment of conviction pursuant to Crim. P. 35(c). 
4 ¶ 10 The People responded to the supplemental motion, again arguing that the motion was untimely. They asserted that the correction of Williams’ sentence from mandatory to discretionary parole did not renew the three-year deadline to file Crim. P. 35(c) claims. ¶ 11 In December 2021, the postconviction court issued an order denying Williams’ Crim. P. 35(c) motion without a hearing because the motion was untimely. At the time, divisions of this court were split on whether the correction of an illegal sentence renews the three-year deadline for filing Crim. P. 35(c) claims. The division in Baker applied the rule from Leyva and held that the correction of the defendant’s illegal sentence reset the deadline for him to file his Crim. P. 35(c) motion. Baker, ¶¶ 35-37. And the division in People v. Hunsaker, 2020 COA 48, ¶ 16 (Hunsaker I), aff’d and remanded, 2021 CO 83, held more narrowly that “Leyva limits the renewal of the three-year deadline for filing a Crim. P. 35(c) motion to claims that are related to how the illegality in the original sentence potentially affected a defendant’s original conviction.” In the order here, the postconviction court found Hunsaker I’s reasoning more persuasive and concluded that Williams’ Crim. P. 35(c) claims 
5 “ha[d] no connection to the illegal sentence that was corrected when the Court granted his Crim. P. 35(a) motion.” The court also found that Williams “[did] not argue that his failure to bring his postconviction claims within three years of the date his conviction became final was the result of either justifiable excuse or excusable neglect.” II. Williams’ Crim. P. 35(c) Motion Is Time Barred ¶ 12 Williams contends that the postconviction court erred by denying his Crim. P. 35(c) motion as untimely. First, he concedes that his Crim. P. 35(c) motion is time barred but argues, for the first time on appeal, that justifiable excuse or excusable neglect existed for the late filing. Second, he contends that he is entitled to a hearing on the timeliness of his motion. And third, he urges us to reject supreme court precedent that has since resolved the division split on whether the correction of an illegal sentence renews the three-year deadline for filing Crim. P. 35(c) claims. We reject his contentions. 
6 A. Standard of Review ¶ 13 We review de novo a postconviction court’s denial of a Crim. P. 35(c) motion without an evidentiary hearing. People v. Cali, 2020 CO 20, ¶ 14. B. Applicable Law ¶ 14 Except for class 1 felonies, Crim. P. 35(c) claims must be filed within three years of a felony conviction becoming final. § 16-5-402(1), C.R.S. 2024. If a defendant pursues a direct appeal, as was the case here, a conviction becomes final for purposes of section 16-5-402(1) when the mandate issues from that appeal. See Hunsaker II, ¶ 36. A Crim. P. 35(c) motion filed outside of the three-year time limit is barred unless the defendant affirmatively pleads facts supporting the existence of an exception to the statutory time bar, such as justifiable excuse or excusable neglect. Crim. P. 35(c)(3)(I). ¶ 15 Crim. P. 35(a) allows a convicted defendant to challenge their sentence as illegal or as illegally imposed. A claim that a defendant should be subject to discretionary, rather than mandatory, parole constitutes an illegal sentence claim under Crim. P. 35(a). See People v. Rockwell, 125 P.3d 410, 416 (Colo. 2005). A successful 
7 Crim. P. 35(a) motion may reset the time limits for filing a Crim. P. 35(c) motion in some circumstances. Hunsaker II, ¶ 26. ¶ 16 One week after the postconviction court issued its order in this case, the supreme court announced Hunsaker II. As explained, before Hunsaker II, divisions of this court were split on whether the correction of an illegal sentence under Crim. P. 35(a) renewed the deadline for filing Crim. P. 35(c) claims. The confusion stemmed from the seemingly contradictory language in Leyva, which adopted both broad and narrow interpretations of the effect of a successful Crim. P. 35(a) motion on an untimely Crim. P. 35(c) motion. Leyva, 184 P.3d at 50 (compare “[T]he term ‘conviction’ must refer to a valid, final determination of guilt and sentencing” with “If an illegality is discovered in a prisoner’s sentence, the prisoner should be allowed to pursue any good-faith arguments for postconviction relief addressing how that illegality potentially affected his or her original conviction”). ¶ 17 After recognizing the contradictory language in Leyva, the supreme court resolved the division split. The court held that “[a] defendant who successfully corrects an illegal sentence may thereafter collaterally attack their conviction, but [he] may only 
8 raise arguments addressing how the illegality in the sentence potentially affected the original conviction.” Hunsaker II, ¶ 26. Therefore, a defendant could bring an otherwise untimely Crim. P. 35(c) claim following a successful Crim. P. 35(a) motion only if the Crim. P. 35(c) claim addressed how the illegality of the sentence affected the original conviction. Id. Hunsaker II characterized this as justifiable excuse because “[a] court’s correction of an illegal sentence is precisely the sort of outside circumstance that excuses the untimely filing of a collateral attack with regard to claims that the illegal sentence rendered the conviction itself infirm.” Id. at ¶ 34. C. Application ¶ 18 Here, the mandate in Williams’ direct appeal was issued on March 6, 2009. He could therefore file Crim. P. 35(c) claims until March 6, 2012. Williams did not file the pro se and supplemental motions at issue here until 2020 and 2021, respectively, rendering them over eight and nine years late. Accordingly, Williams’ motion is time barred. ¶ 19 First, Williams attempts to exclude his motion from the time bar by arguing, for the first time on appeal, that justifiable excuse 
9 or excusable neglect exists for the late filing. Specifically, he claims that the DOC “illegally deprived him of essential legal documents he needed for his 35(c) motion,” and “the numerous lockdowns in the correctional facilities he was in from 2009-2012 prevented him from accessing the law library to draft his 35(c) motion.” However, we will not consider allegations never presented to the postconviction court. People v. Ortega, 899 P.2d 236, 239 (Colo. App. 1994) (appellate courts will not consider factual allegations concerning justifiable excuse or excusable neglect raised for the first time on appeal); see also People v. Clouse, 74 P.3d 336, 340 (Colo. App. 2002) (“A defendant must allege in a Crim. P. 35 motion facts that, if true, would establish justifiable excuse or excusable neglect for a belated filing.”). Because Williams cannot assert these arguments for the first time on appeal, we also reject his request for a hearing on whether he established justifiable excuse or excusable neglect. ¶ 20 Second, Williams argues that the three-year deadline for filing Crim. P. 35(c) claims was renewed when his illegal sentence was corrected in 2017. In doing so, he urges us not to follow Hunsaker II and to instead follow a broad interpretation of the holding in Leyva. He concedes that “although [his] originally imposed 
10 sentence was illegal, the illegal sentence does not have to do with his claims in his Crim. P. 35(c) motion.” Indeed, Williams’ Crim. P. 35(c) claims regarding ineffective assistance of counsel and sentence proportionality do not address how the illegality of his sentence affected the original conviction. Yet he argues that under Leyva, his entire sentence was illegal until it was corrected in 2017, which reset the clock. However, Hunsaker II abrogated Leyva, and we are bound by the supreme court’s decisions. People v. Harmon, 2019 COA 156, ¶ 3 n.1 (the Colorado Court of Appeals is bound by the holdings of the Colorado Supreme Court). ¶ 21 For these reasons, the postconviction court did not err by denying Williams’ Crim. P. 35(c) motion as untimely. III. Disposition ¶ 22 The order is affirmed. JUDGE GROVE and JUDGE SULLIVAN concur.